Good morning, Your Honors. If it may please the Court, I would initially like to reserve about two or three minutes for rebuttal. Would you introduce yourself for the tape? Thank you. My name is Anthony Friedman. I represent Byron Moldo, the Chapter 7 trustee, in the matter of Thomas Miguel Selwyn. Thank you. Thank you. The first issue that I have, and it really isn't clear, is when we had the trial was over and the judge orally issued his judgment, but prior to the formal judgment being entered, there was a motion to amend the judgment. That matter, while the matter was appealed to the Bankruptcy Appellate Panel, it was then remanded prior to oral argument at the Bankruptcy Appellate Panel for the judge to consider the issues that were brought up. At that time, there were further findings of fact, and the appellant at the Bankruptcy Appeal to include that motion or the outcome, though the findings in that I think are relevant, and the trustee contends that the memorandum of decision and those further findings would be encompassed in this appeal as well. But the BAP didn't agree with that, right? They didn't. The only judgment that they considered was the original one. That is correct, Your Honor. And they did that because the appellant before the BAP had not amended her appeal. That is correct. But that worked to the detriment of the trustee. It did at the BAP. That's correct, though we contend, and the purpose of the appeal to this court is that regardless of that memorandum of decision coming in, that I think the findings of fact and the conclusions of law that the trial court found are sufficient to have entered the judgment properly at the Bankruptcy Court. Which ones? The first ones or the second ones? Both, but definitely the first one by itself, if that's what we're only dealing with. The judgment entered on, I believe it was January 22nd. The oral one? No, the oral one was, the findings of fact and conclusions of law were put on the record on January 7th, 2003 at the trial, and then there was a formal order that was entered giving judgment to the trustee, and it said the findings of fact and conclusions of law are placed on the record. What did the BAP review, though? Didn't the BAP review the earlier findings? Isn't that what they reversed? Yes. And you're saying that even the earlier findings are sufficient to justify a judgment for the trustee? Correct, Your Honor. As well as the second ones, which are even more favorable to the trustee. Correct, Your Honor. Which the BAP didn't consider. That is correct. That being said, with regard to California Civil Code section 3439.04b2, which is one of the causes of action that the trustee commenced his fraudulent transfer action under, the findings of fact and the conclusions of law at the trial court clearly established that the transfer was made. A creditor existed at the time that the transfer was made. There was no reasonable equivalent value, and that the debtor intended to incur or reasonably should have believed that he would incur debts that he wouldn't have the ability to pay. At the bankruptcy appellate panel, the bankruptcy appellate panel found that there was no evidence of the intent by the debtor whether he had the ability. The trustee argued at trial that the statement of financial affairs and the schedules of the debtor, which were entered and filed with the court, which commenced the bankruptcy case under penalty of perjury, provided that the evidence in there that he had no income for the two years prior to the bankruptcy case, that he did have those creditors that existed or the one particular creditor that entered that existed on or before the date of the transfer, that there was no ability to pay. The debtor was unavailable at trial. I had no way of getting any contact to him. The only thing we had was an address that he had at the date of the petition, and the defendant at the trial was the mother of the debtor, and she didn't have him at trial or she didn't have any contact at the time. And I think the record provides that. I'd like to... He shows up later on remand. Is that correct? Correct. He shows up at the remand from the BAP to deal with the motion to amend. That is when he does show up. You are correct. He shows up kind of out of the blue in the courtroom? I don't know if... It was out of the blue to me. I wasn't intending him to be there at the hearing, but yes, he was there, and at that point, the trial court judge gave me the opportunity to conduct some discovery, at which time I did, which... Yeah. Okay. What I'd like to refer the court to is in appellant's excerpts of record before this court at tab 5, page 54 of 59. It is lines... It starts at line 14, and this is the transcript from the trial, and what it says is that the statement of affairs indicates that on May 30th, the debtor was insolvent within the term because the evidence shows by his own statements that he did not have the ability to pay that creditor, or for that matter, any other creditors, listed or unlisted, on that May 30th date because he had stated under penalty of perjury in the statement of affairs that he, for the last two years prior to the filing of the bankruptcy case, which was February 28th, 2001, that he had no income from their business or from employment, and that's clearly stated on the record. The trial court goes on. So the evidence is shown by his own statements that he had a creditor, that he was... He did not have the ability to pay creditor on that date, and that he was insolvent at that date. What is the evidence of intent in your view? The evidence of intent is he had no income, and by stating that he had no income under penalty of perjury for those prior two years, it would be impossible to make those payments unless money was either gifted to him or he incurred further debt to get money to pay that other creditor. So I believe that the intent is inferred from those facts which establish that because he had no income, it would be impossible for him to pay debts as they came due. That is with regard to 3439.04b2. With regard to 3439.05, the trustee, I believe, also proved his case on that regard as well at the trial court. There was a transfer by the debtor. I don't think any of that's disputed. It was fraudulent as to a creditor whose claim arose before the transfer was made. There was not reasonable equivalent value, and either debtor was insolvent at the time or rendered the debtor insolvent at the time. Now, the argument you're making as of intent is really based upon his statement that he had no income. That is correct. And that's precisely the argument you made in front of the BAPT that didn't convince them. That is correct. Yeah. That is correct. And the hard part that the trustee and I have with this is that this debtor was unavailable, and because he was unavailable, the estate and the creditors of the estate shouldn't be prejudiced because this debtor is unavailable to not be able to at least infer the intent based on his schedules and his statement of financial affairs, which are filed under penalty of perjury. If the person's unavailable, it seems that if the trustee doesn't have the obligations that are given to him under the bankruptcy code to go forward to try and collect this property, to pay these creditors. Yeah. How much money does this take here? What I'm worrying about is just the straightforward practical problem. How much is there to eat into before we're sort of exhausted by paying for lawyers? Well, I will say that in this particular case, a significant amount, obviously, has been generated in attorney's fees because of the appeals that have now arisen to this Ninth Amendment. And I will say, and I know that the trustee will support me, the trustee would probably take the same position, that to the extent this has become an administratively insolvent case, that there would be a distribution to creditors. The trustee and my firm would take the position that to the extent we need to cut certain of our fees in order to allow that distribution, we would do that. And I'm sure that U.S. Trustee's Office would ask us to do that. And we would, because in this particular case, we do believe that there was that transfer and the property should have come back. Okay. One of the questions behind my question is, if we were, for example, to conclude that the BAP got it right on the facts underlying the first judgment, but we're not certain as to whether or not what the answer would have been had the BAP reviewed the facts under the second judgment. I mean, if there's a lot of money at stake and the lawyers' fees in proportion are fairly small, will you remand to the BAP to see what they're going to do? And I'm debating, you know, by the time we're done, is all the money out the window if we remand to the BAP for redoing it on the second set of facts? Because the second set of facts is dramatically different. The second set of facts are dramatically different. There is a showing of income. There is a showing of significant more debt than what was originally provided in the schedules in the statement of financial affairs. So, I agree with you. At the time, there was, trustee contended there was probably $50,000 in equity in the property. And based on the original schedules, there appeared to be about $30,000 in debt that was on. So, based on that, it appeared to be had. It was resolved early on. It would have appeared to be a surplus case where we would have been able to pay all the creditors and money would have gone back to the debtor. So, obviously, over the last four years, there has been an increase in value in the property. This court, the Ninth Circuit, has found that the appreciation is property of the estate. So, that's really not my concern. There is now significant more debt. As of this morning, I did not check to see what claims were actually filed in the case. But that is the position. I think at trial, the trustee, based on the evidence that he had and the information that he had, I think he clearly proved his case with regard to this fraudulent transfer. It was a quick claim deed. And it said gift. And there was no consideration.  Thank you, counsel. You have exceeded your time, but we used a lot of it with questions. I would like to reserve just a minute because I do want to make one other point to this court regarding the decision of the Bankruptcy Appellate Panel. Why don't you go ahead and do that now since it may not be proper rebuttal. Thank you. The Bankruptcy Appellate Panel, in its case in determining whether a debtor had the ability to pay, they cited the case of Vortex Fishing Systems. It's at 277 F3rd 1057. And I think that the cite to that was misplaced. That was a case that involved an involuntary bankruptcy petition. And in that particular case, there were creditors that petitioned to commence the involuntary bankruptcy petition and the bankruptcy filing. And what happened is certain of those creditors decided, we want to withdraw our claims. And that then resulted in there not being enough creditors to support the involuntary bankruptcy filing. They cited a proposition that you have to look at the totality of the circumstances in determining whether a debtor is generally paying its debts as they come due. And in that particular case, the analysis was required under 11 U.S.C. section 303 H1. It wasn't talking in relation to the California fraudulent transfer section or it wasn't talking to section 548 of the Bankruptcy Code for fraudulent transfers. It was talking about what is needed under an involuntary bankruptcy petition. So I think that they were misplaced in that decision in citing for that statute. And I think that the trustee did prove his case at trial and to the extent that it is supplemental memorandum provided, I think, there further compounded or didn't compound, but further extended the trustee's points and did support the trustee's judgment. Thank you. Thank you, counsel. We'll hear from Mr. Smith. Thank you. Good morning, Your Honors. Andrew Smith for the appellee. I'm just going to refer to the first ruling. And from what Mr. Friedman said and from what the BAP said, it's clear this debt, this debt that shows insolvency was one bill to pack bail, which was $2,000. After filing or after the transfer, pardon me, the debtor paid some of it, paid $700. I would infer he's paying. Now, I think it's almost using the technicality to say, to make it as simplistic as to say, well, he's not working. Therefore, he can't pay his bills. Clear cut, black and white. He's not working. And he has a bill. It's a small bill. But we've crossed the T. We've hit those two elements. Clearly, he does have income. He's not starving to death. He has a roof over his head. He uses transportation. We could assume so. Though that small a debt doesn't show he can't pay it. And, in fact, he did. It's almost a question of law, if you read the BAP opinion, if that's the only debt. And there's no question, at least on that opinion, on the first go around. How could you say he can't pay it when, in fact, he did? And if you get to just the logical conclusion of what the Fraudulent Transfer Acts usually really get to, and that is the person who's not paying his bills, so obviously the creditor is going to be after him, so he disables himself. He transfers assets out of reach. Those two things show the intent. Well, that's not here. I don't think anybody was thinking, you know, well, there's $1,300 to go to Pac Bell, so I'll put the house out of reach. So just a logical conclusion was there wasn't an intent. Pac Bell wasn't in his mind when he transferred it. Why shouldn't we consider the additional evidence that came in later? And the court didn't amend the judgment. It simply filed additional findings of fact and conclusions of law in support of the same judgment. I realize the BAP didn't review that, but when we're looking at it now, why shouldn't we look at what the true situation was? Well, the appellee, would she really be on notice to address that or not? It's pretty unclear. Is that the decision that's on appeal or not? If she's told that you only get you didn't do it right, you didn't file an amended appeal, so therefore we're only going to look at the first one and she relies on it. What would be her position in terms of the procedural propriety if we were to remand it, though, for reconsideration in light of those of the later developments, that then she would have notice and an opportunity to respond? Well, two comments, yes. You could do that. And, again, as Your Honor stated, this doesn't sound cost effective, but there was a point. I didn't write any of the briefs, as far as I know. I've called for oral argument. And I know the BAP said they weren't going to consider the transfer of an exempt asset. But under 544 and 542, it wouldn't really matter. But once a year has passed and you use California law, the transfer of the homestead, which creditors could not have reached anyway, is not an asset for purposes of fraudulent transfer of assets. I'd try and bring that up if we went back to the BAP. For real-world purposes, this asset wasn't in reach of creditors. In bankruptcy court, in fact, it was, because under 544, what I've just stated doesn't count. But that does go to intent because this is not something they could have got anyway. It was out of reach. I'm sorry, counsel. I don't understand what you're saying. Had the judgment gone the other way in the bankruptcy court, the trustee could not have reclaimed the property based on a fraudulent transfer? No, the trustee didn't have to use 3439, which has some limitations compared to the bankruptcy code. Once you're past a year and you have to use California law, you have the problem, the trustee has the problem that a transfer of an asset generally exempt under non-bankruptcy law doesn't fall under. This was within a year, and the trustee could have used 542, I believe, and 544 and succeeded. Of course, he still would have had to prove this intent and insolvency. I'm just talking if we're considering a debtor who knows the law perfectly. I don't know if they did or not. But for real-world purposes, this transfer didn't harm any creditor because if they had never gone to bankruptcy court, the creditor couldn't have got this asset. It was the homestead. I see. In other words, if it's a debt collection of a non-bankrupt person, the fact that it was a fraudulent transfer wouldn't matter. Well, outside bankruptcy court, it wouldn't be a fraudulent transfer. And not only that, it wouldn't be something where the debtor had disabled himself. It wouldn't have been something that a creditor could have attached because this was the homestead. So that all goes towards intent. That's what all the discussion about being insolvent is. It all boils down to, is somebody playing games to put their assets out? The evidence on that was very different the second time around. Yes. I mean, the first time around, it was pretty sketchy. I think that's what the BAP ended up concluding, is that you just don't have enough to infer intent. But the second time around, the debtor was subject to cross-examination. There was evidence of a great deal more debt. It's a very different record. My question is, why doesn't that matter? It does matter, but there would be arguments even from the second go-around that would help, such as working. And perhaps some of this debt was secured, so this creditor really was not – they were looking to their security. But that's true. It's a whole different ballgame. But the client doesn't seem to have addressed that in her – she wrote the brief. And secondly, it's unclear, like the court said at the very beginning, you didn't file an amended appeal, so that whole thing doesn't come up before the appellate court. However, that seems to inure to her benefit. Right. And a last comment would be, the debtor's unavailable for the trustee. In a way, that's too bad for the trustee, because it's their burden, and if they don't get the debtor there under subpoena, then they're – Could the trustee have filed a cross-appeal to raise the issue of the second set of findings, if they wanted to? I'm not familiar with the sort of BAP procedure. I should be, but I'm not. Well, I'm – it's hard to say, because you'd be filing a cross-appeal on a set of findings you agreed with. Usually when people appeal, they don't agree. Somehow, maybe you file something else, some sort of request that the appellate court include everything. And again, I hope the Court simply decides it on the same record the BAPs saw, but if we have to go back, that would be the second choice. Thank you. Thank you. We will restore about a minute for rebuttal, if you'd like to use it, or it's up to you. Thank you. I thank you for the middle of rebuttal. I think it is important to take into consideration that the debtor was unavailable and that the trustee did have to take into account what the schedules and the Statement of Financial Affairs were. These documents are filed under penalty of perjury. And the debtor didn't file a change of address. The debtor was unavailable. There were contacts or attempts at contacts with the debtor, and he wasn't there. And the trustee had to proceed with the case, and I think it is important to take into account that the debtor wasn't unavailable and that the trustee did have these documents signed under penalty of perjury with which he had to prosecute his case. I do, again, think that at trial we proved our case. It might not have been the greatest case, but there was a creditor. And unfortunately, if the income is zero and the creditor is owed a dollar, there's money owed to somebody. And I do think that it was not the greatest of cases, but I think that we clearly in the court established that there was a finding of inability to pay. And I think if we just take those findings, those were the facts that were entered and those were the findings, and I think those findings are subject to a clearly erroneous standard, and I don't think there was an error. Thank you, counsel. Thank you. Thank you. The case just argued is submitted.
judges: Graber, W. Fletcher, Fogel